IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| VARSITY SPIRIT LLC F/N/A VARSITY SPIRIT CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>JOSH QUINTERO,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  No.<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT**

Plaintiff, Varsity Spirit LLC f/n/a Varsity Spirit Corporation ("Varsity"), by its undersigned attorneys, hereby brings the following Verified Complaint for temporary and permanent injunctive relief and damages against Defendant, Josh Quintero ("Quintero"), and in support thereof avers as follows:

**INTRODUCTION**

1.  Varsity is a global leader in conducting, sponsoring and promoting cheerleading, dance team and dance competitions, camps, workshops, coaching clinics and conventions. Varsity also sells and markets athletic apparel and accessories to cheerleading and dance teams. In 2013, Varsity and Quintero entered into an Employment Agreement ("Agreement").[1] In consideration of his employment with Varsity, Quintero agreed to be bound by certain restrictive covenants that applied during his employment and for eighteen (18) months thereafter. Specifically, Quintero

---

[1] The Employment Agreement is incorporated herein by reference and a copy of the Agreement is attached hereto as Exhibit A.

agreed that he would not compete with Varsity, that he would not solicit Varsity's customers or employees, and that he would not misappropriate Varsity's confidential and proprietary information.

2. On December 7, 2020, Quintero submitted a two week notice of his resignation from his employment with Varsity. Between January and March, 2021 Varsity has received information that Quintero has violated the non-competition, non-solicitation of customers, non-solicitation of employees, and protection of confidential information covenants in his Agreement. Quintero has accepted employment with The Open Championship Series as Director of Communications. The Open Championship Series is a direct competitor of Varsity. Quintero is directly competing with Varsity and soliciting Varsity's customers and employees on behalf of his new employer. Quintero is blatantly breaching the non-competition and non-solicitation covenants of his Agreement. Varsity has instituted the instant action to enjoin these continuing unlawful activities and to recover damages.

## PARTIES

3. Varsity Spirit LLC is a Tennessee LLC. Varsity Brands, LLC, a Delaware LLC, is the sole member of Varsity Spirit LLC. The sole member of Varsity Brands, LLC is Varsity Brands Holding Co., Inc. Varsity Brands Holdings Co., Inc. is an Indiana corporation with its principal place of business in Texas. On November 26, 2014, Varsity Spirit Corporation completed a corporate conversion under Tennessee law into Varsity Spirit LLC, with Varsity Spirit LLC succeeding to and possessing all rights, interests and assets of Varsity Spirit Corporation.

4. Josh Quintero is a citizen of Oklahoma and can be served with process at 16605 E. Market Ave., Fairmont, OK 73736.

## JURISDICTION

5.      Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §§ 1332, 1367 and 1391, inasmuch the parties are citizens of different states, the amount in controversy exceeds $75,000.00, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.  In addition the parties agreed to a contractual venue clause whereby any suit filed by either party arising out of or connected to the Agreement shall be brought in the state or federal courts sitting in Shelby County, Tennessee.  (*see* Exhibit A at ¶ 17).

## FACTS

6.      Varsity is a global leader in conducting, sponsoring and promoting cheerleading, dance team and dance competitions, events, camps, workshops, coaching clinics and conventions. Varsity provides instruction, training, choreography, and demonstration services for coaches, cheerleaders, dance teams, drill teams and similar groups. Varsity also provides consulting services in the areas of cheerleading, dance and spirit-related competitions and events.  Varsity also provides athletic apparel and accessories for cheerleaders, drill teams, pep squads, mascots, band and booster clubs, and dance teams.

7.      Varsity organizes, sponsors, schedules, and conducts cheerleading and dance competitions, events and camps throughout the United States.  These events include regional events and national events that draw competitive cheerleading and dance teams from across the country in a variety of age groups and skill levels.  Varsity markets and sells cheerleading and dance apparel, equipment and accessories to cheerleading and dance teams through the United States, including at Varsity's competitions.  Varsity also conducts education and training at clinics and camps throughout the United States.

8. At all times relevant to this matter, Quintero was the National Sales Director for Varsity's D2 Summit and Oklahoma State Director for Varsity's National Cheerleaders Association (NCA) and Universal Cheerleaders Association (UCA) brands.

9. The D2 Summit is a national cheerleading competition event for smaller gyms (less than 125 athletes) across the country. Cheerleading teams compete at various Varsity-sponsored events around the country to qualify for Bids to participate in End of Season ("EOS") Championships, including the D2 Summit.

10. Quintero acted as National Sales Director for the D2 Summit since its inception. Quintero was involved in the entire bid process with Varsity for these end of year events. He was involved in the development of how bids are awarded and distributed, resolving issues and running the D2 Summit event onsite. He was also involved in training the staff and offices across the country that implement the bid process at Varsity's events.

11. Quintero reported to managers based in Memphis for all Summit-related issues. He routinely travelled to Memphis and Knoxville, Tennessee related to the D2 Summits, including for strategy and planning meetings in Memphis, Tennessee.

12. Quintero also performed duties as Varsity's Oklahoma State Director. His duties included building and maintaining key customer relationships; directing customers into appropriate camp and competition products and services that meet the customers' unique needs and achieve territory sales targets; identify key strategic university partners within the state and build relationships to leverage universities for camp locations, staff recruiting, and cheer and dance advisory needs; and, develop state association relationships with an overall goal to create a safe environment that encourages cheer participation.

13. In his roles as National Sales Director for the D2 Summit and Oklahoma Sales Director for Varsity, Quintero developed relationships with Varsity's customers, vendors, and contractors, particularly those customers and vendors that participated in Varsity's national competitions such as the D2 Summit.

14. Varsity has developed special techniques, programs, pricing models, bid processes, and customer knowledge built up over many years. Varsity's business information is very valuable and is maintained with secrecy. Information about specific services, athlete and coach training, techniques, competition scoring system, bid processes, pricing models, and customers is closely guarded, confidential business information. Customer lists, customer needs, customer contact identities, customer decision maker identities, customer pricing preferences and customer performance preferences, are all confidential information that could not be ascertained by competitors in the absence of impermissible disclosure. Such information is extremely valuable to Varsity.

15. To ensure that Varsity is able to market and sell its products and services, Varsity discloses a significant amount of its confidential, proprietary, and trade secret information to its key employees, including Quintero. The confidential, proprietary, and trade secret information provided to these employees includes, but is not limited to, information regarding customers and prospective customers, costing, gross margins, pricing, strategic business plans, market plans for national events and competitions, service and product design, processes, proprietary methods, and financial information. In particular, Quintero has intimate knowledge of Varsity's entire EOS business model and processes, how bids are awarded, how the championship events are decided, and future business plans for these events, including the D2 Summit.

16. Varsity's confidential, proprietary, and trade secret information, which is maintained in both electronic and hard copy forms, was compiled through and by the use of Varsity's ingenuity, time, marketing, and event development strategies, pricing, labor, expense, investigation, and experience, rendering this information a vital asset of Varsity.

17. Varsity takes reasonable steps to protect its confidential, proprietary, and trade secret information, including its customer base, and its goodwill. Specifically, Varsity requires its key employees, including Quintero, to execute confidentiality and restrictive covenant agreements. Varsity also has adopted internal policies wherein confidential, proprietary, and trade secret information is protected from unnecessary disclosure to third parties.

18. As set forth above, Quintero signed the Agreement on August 13, 2013.

19. As set forth in Exhibit A, Quintero agreed to abide by certain restrictive covenants upon the cessation of his employment with Varsity for any reason. Specifically, Quintero agreed that for eighteen (18) months after the end of his employment with Varsity, he would not, directly or indirectly:

- Engage or participate in the activities of a Competitor; assist, advise or be connected with (including as an employee, owner, partner, shareholder, officer, director, member, advisor, consultant, agent or otherwise) a Competitor; permit his name to be used by a Competitor; or render services to a Competitor anywhere in the United States or Canada;[2]

- Sell, offer to sell or advertise for sale Products or Services to Groups through Channels of Distribution anywhere in the United States (as those terms are further defined in the Employment Agreement);

---

[2] Varsity, through this action does not seek to enforce this agreement in Canada.

- Solicit or attempt to solicit any customer of Varsity, with whom Quintero had contact or whose identity Quintero learned as a result of his employment with Varsity, to purchase products or services from a Competitor or to cease doing business with Varsity;

- Solicit or attempt to solicit any supplier, licensor, licensee or other business relation of Varsity to cease doing business with Varsity; or

- Hire or attempt to hire any person or entity who is then a director, officer, employee or agent of Varsity or any Affiliate of Varsity to perform services for a Competitor.

See Exhibit A – Employment Agreement at ¶¶ 10(f) (i) – (v).

20. Quintero also agreed that he would not use or disclose any confidential, proprietary and/or trade secret information of Varsity at any time. See Exhibit A at ¶ 7.

21. The Agreement also contains Tennessee choice of law and forum selection clauses. Id. at ¶ 17.

22. Quintero resigned his employment with Varsity effective on December 21, 2020. Quintero's yearly salary with Varsity was $55,300.00.

23. In or about January, 2021, Quintero began employment with The Open Championship Series ("OCS"). OCS is a direct competitor of Varsity.

24. OCS competes with Varsity on a nationwide, indeed international basis. According OCS's website, they produce cheer competition events throughout the United States – divided into 12 regions – as well as Australia, Canada and Sweden.

25. Coinciding with its hiring of Quintero, OCS has announced that it is producing a new event in 2021 – The Allstar World Championships. OCS's Allstar World Championship directly competes with the Varsity EOS events, including the D2 Summit for which Quintero had

substantial responsibility. As with the D2 Summit, teams qualify for the Allstar World Championship event by competing in other OCS events and earning "bids." Indeed, OCS is offering to allow teams to "swap" bids from Varsity national competition events, such as the D2 Summit, to participate in the Allstar World Championship.

26. The D2 Summit is currently scheduled to occur at May 13-15, 2021 in Orlando, Florida at Walt Disney World Resort's ESPN Wide World of Sports Complex. The OCS's Allstar World Championship is scheduled to take place on May 3-5, 2021 at the Universal Orlando Resort and Orlando Convention Center in Orlando, Florida.

27. Quintero is identified on the OCS website as OCS's Director of Communications:



28. ON or about January 6, 2021, OCS uploaded a video to its Facebook page. The video includes Quintero and announces his new position as OCS's Director of Communications.

29. In his role with OCS, Quintero is breaching the non-competition and non-solicitation covenants of his Agreement with Varsity. His actions in breach of his Agreement have included:

- He contacted a gym owner, Maureen Shevlin, to provide her with information about OCS's Allstar World Championship.

- Quintero has communicated with gym owners regarding the types of awards OCS offers at its Open Championship events.

- On February 23, 2021 Quintero communicated via email with a Varsity customer, CJ Green of World Class Athletics PCB, a cheer competition gym in Panama City Beach, Florida confirming the gym's cheer team registration for an OCS event.

- Between February 10 and February 16, 2021, Quintero exchanged emails with United by SHC, a cheer competition gym and Varsity customer in Sunbury, Ohio, regarding their registration for OCS's Allstar World Championships.

- On February 10, 2021, Quintero communicated with Extreme All Stars, a cheer competition team and Varsity customer in Glasgow, Kentucky regarding their registration for OCS's Allstar World Championships.

- On February 10, 2021, Tracy Derr of Pennsylvania Elite Cheerleading, Inc. in Winfield, Pennsylvania, responded to a solicitation from Quintero regarding participating in OCS's bid swap process (transferring the customer's bid from an existing event, such as D2 Summit to the OCS Allstar World Championship).

30. Each of the above referenced emails was sent to Quintero at his Varsity.com email address. These emails confirm that Quintero developed relationships with these customers through Varsity – relationships he is now exploiting on behalf of OCS. It appears that these emails were inadvertently sent to Quintero's Varsity.com email address. They were intended to go to his new openchampionshipseries.com email address. As such, these emails represent a small fraction of the customer interactions and solicitations in which Quintero has participated on behalf of OCS and in breach of the Agreement.

31. OCS's classifies its "bids" to the Allstar World Championship as either "Paid" bids or "At large" bids. After hiring Quintero, OCS announced that it would allow cheer teams to "swap" bins from other competitions, such as the D2 Summit, OCS announced that it would also allow teams to "swap" "Wildcard" bids. The term "Wildcard" with reference to bids is used by Varsity, not OCS.

9

32. Quintero is soliciting Varsity customers to become customers of OCS.

33. Upon information and belief, Quintero is also soliciting Varsity employees to resign from Varsity and accept employment with OCS. On March 3, 2021, Varsity learned that Nathan Gonzales, a Varsity employee, had accepted employment with OCS as its School/Rec Coordinator.

34. The services, events, and competitions Quintero is promoting on behalf of OCS are directly competitive with the services, events and competitions Varsity offers. The duties and responsibilities Quintero is performing for OCS are substantially similar to the duties and responsibilities he performed for Varsity.

35. Quintero is working in a position that is directly competitive with the position he held at Varsity. This position will allow Quintero to provide OCS with an unfair and unlawful competitive advantage over Varsity, the damage from which will be irreparable.

36. Quintero threatens Varsity with the loss of dozens, if not hundreds, of customers from the D2 Summit alone. The amount of threatened monetary losses, while difficult to quantify, exceeds $75,000.000.

37. Upon information and belief, OCS hired Quintero to implement strategies and leverage knowledge of Varsity's confidential information, proprietary processes and client relationships Quintero developed at Varsity.

38. OCS, including Quintero, are misappropriating Varsity's proprietary information. As an OCS employee, Quintero can, and inevitably will, use this confidential information and client relationships to develop competitive events, products and services. These actions will result in material detriment to Varsity.

39. Unless Quintero is restrained from unfairly competing against Varsity in violation of the Employment Agreement and misusing the confidential information that Quintero gained from Varsity, Plaintiff has and will continue to suffer immediate and irreparable harm.

40. Varsity has no adequate remedy at law for these injuries. Injunctive relief is necessary to forestall continuing injury from Quintero and to ensure that Quintero does not continue to solicit Varsity's customers and employees or misappropriate Varsity's confidential information.

## CAUSES OF ACTION

### Breach of Contract

41. The allegations contained in Paragraphs 1-40 are incorporated herein by reference.

42. The Agreement provides sufficient consideration – including continued employment and Varsity's disclosure to Quintero of Varsity's confidential, proprietary and trade secret information – for Quintero's promises in the Agreement, including his promise not to compete with Varsity.

43. The Agreement constitutes a valid, enforceable contract supported by adequate consideration.  The restrictive covenants are reasonable and no greater than necessary to protect and preserve Varsity's legitimate protectable interests, including as to the reasonableness of the time and territorial restrictions.

44. Varsity has performed its obligations to Quintero under the parties' agreement, including actual employment, access to confidential, proprietary and trade secret information, and the payment of salary and other monies to Quintero.

45. Quintero, as alleged above, has failed to perform his obligations to Varsity under the parties' Agreement, thus breaching that Agreement, including Quintero's ongoing employment with a competitor of Varsity.

46. As a direct and proximate result of Quintero's breaches, Plaintiff has suffered and will continue to suffer irreparable injury and loss. Plaintiff will continue to sustain such harm unless the Agreement is enforced.

47. The harm to Plaintiff, if specific performance does not issue, is greater than the harm to Quintero if it does, and the public interest will not be affected by the grant of specific performance.

48. Accordingly, this Court should enter an order for specific performance directing Quintero to refrain from maintaining any role (including as owner, partner, officer, or employee) or providing any services to Plaintiff's direct competitor, The Open Championship Series, and its Allstar World Championship productions and to otherwise honor his obligations in the Agreement, including to protect and return any of Plaintiff's confidential information.

49. In addition, Varsity has sustained contractual and consequential damages in an amount to be determined at trial as a result of Quintero's breach of the Agreement.

WHEREFORE, Varsity prays for relief as follows:

a) That this Court take jurisdiction of the parties and the subject matter hereof;

b) That judgment be entered for Varsity and against Quintero granting temporary and permanent injunctive relief, including an order enjoining Quintero for the full duration of the restrictions from further conduct constituting breach of his non-competition and non-solicitation covenants with Varsity.

     c)     That the court order Quintero to cease any use or disclosure of (and to return to Plaintiff) any of Plaintiff's confidential information and company property in his possession.

     d)     That judgment be entered for Varsity and against Quintero for contractual, compensatory, and damages, and pre- and post-judgment interest in an amount to be ascertained and established at trial;

     e)     That Varsity be awarded its reasonable attorneys' fees and litigation costs and have such other and further relief as the Court may deem just and proper.

Dated this 31st day of March, 2021.     Respectfully submitted,

*/s/ William S. Rutchow*
William S. Rutchow, TN #017183
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, TN  37219-2446
Telephone:  615-254-1900
Facsimile:  615-254-1908
William.Rutchow@ogletree.com

*Attorneys for Plaintiff*

**VERIFICATION**

I, <ins>John Newby</ins>, declare under penalty of perjury that the foregoing is true and correct. I am authorized to make this verification on behalf of Plaintiff. I have reviewed Plaintiff's Verified Complaint and attest that the facts and allegations contained therein are true and accurate to my knowledge based upon my personal knowledge, or facts developed and provided to me by other agents of Plaintiff, or documents I have reviewed, except to those matters stated on information and belief, and as to those matters, I believe them to be true.

*John Newby* (signature)

This _____ day of <ins>03/30/2021</ins>, 2021.

46592104.1

14



# SIGNATURE CERTIFICATE

**REFERENCE NUMBER**
08EFC8E4-05BF-4871-9131-FCF427A6DF74

## TRANSACTION DETAILS

**Reference Number**
08EFC8E4-05BF-4871-9131-FCF427A6DF74
**Transaction Type**
Signature Request
**Sent At**
03/30/2021 12:49 EDT
**Executed At**
03/30/2021 12:52 EDT
**Identity Method**
email
**Distribution Method**
email
**Signed Checksum**
4bdd3338f3817c3b12b9b5a86197b0b2fbaf561d716289f95f539643de560195
**Signer Sequencing**
Disabled
**Document Passcode**
Disabled

## DOCUMENT DETAILS

**Document Name**
46592104 1
**Filename**
46592104_1.docx
**Pages**
14 pages
**Content Type**
application/vnd.openxmlformats-officedocument.wordprocessingml.document
**File Size**
205 KB
**Original Checksum**
7a83d301fc829910b2c00e88897f4902f99707ef3d97e338b6d7644ebc2f457d

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>John Newby<br>**Email**<br>johnnewby@varsity.com<br>**Components**<br>3 | **Status**<br>signed<br>**Multi-factor Digital Fingerprint Checksum**<br>f882794d2789e1f264e7e7ef09049a0b173728a62976390c1848146640b9daa0<br>**IP Address**<br>107.77.216.67<br>**Device**<br>Chrome via Windows<br>**Typed Signature**<br>*John Newby*<br>**Signature Reference ID**<br>ABE149D6 | **Viewed At**<br>03/30/2021 12:50 EDT<br>**Identity Authenticated At**<br>03/30/2021 12:52 EDT<br>**Signed At**<br>03/30/2021 12:52 EDT |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 03/30/2021 12:49 EDT | William Rutchow (william.rutchow@ogletreedeakins.com) created document '46592104_1.docx' on Microsoft Edge via Windows from 66.219.27.22. |
| 03/30/2021 12:49 EDT | John Newby (johnnewby@varsity.com) was emailed a link to sign. |
| 03/30/2021 12:50 EDT | John Newby (johnnewby@varsity.com) viewed the document on Chrome via Windows from 107.77.216.67. |
| 03/30/2021 12:50 EDT | John Newby (johnnewby@varsity.com) viewed the document on Chrome via Windows from 40.94.29.87. |
| 03/30/2021 12:52 EDT | John Newby (johnnewby@varsity.com) authenticated via email on Chrome via Windows from 107.77.216.67. |
| 03/30/2021 12:52 EDT | John Newby (johnnewby@varsity.com) signed the document on Chrome via Windows from 107.77.216.67. |